UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLES KEVIN DAWSON,

    Plaintiff

v.                                          Case No.  5:21-cv-240-TKW/MJF

JEREMY HEAD,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Kevin Dawson initiated this action under 42 U.S.C. § 1983 against a single defendant. Dawson alleges that Jeremy Head, an investigator with the Bay County Sheriff's Office, made false statements in an affidavit for a search warrant. Head executed the search warrant at Dawson's residence, and the State charged Dawson with drug-related offenses. Dawson asserts that Head violated the Fourth, Fifth, and Fourteenth Amendments. Because Dawson has failed to state a claim for injunctive relief and also failed to state an official-capacity claim, the District Court should dismiss these claims. Furthermore, because the State's criminal prosecution of Dawson is ongoing, the District Court should stay the remaining claims for monetary relief pending the resolution of the state criminal proceeding.

# I. Background

Dawson, proceeding *pro se* and *in forma pauperis*, is a pretrial detainee currently in custody of the Bay County Jail. The State of Florida has charged Dawson and a co-defendant with several drug-related offenses. *Florida v. Dawson*, No. 21-CF-000742, Information, (Fla. 14th Cir. Ct. Mar. 26, 2021) [1]; *see generally* Doc. 1 at 7.

On February 16, 2021, a "CPT interview was conducted on [B.H.]."[2] Doc. 1 at 5. According to Dawson, B.H. reported to investigators that Dawson kept money in a shoebox under his bed. *Id.* Dawson asserts that B.H. never told the investigators that Dawson kept a green leafy substance in this shoebox. *Id.*

On February 16, 2021, Defendant Jeremy Head filed an application and affidavit for a search warrant of Dawson's residence. *Id.* Head purportedly stated in the affidavit that B.H. reported seeing a "green leafy substance" in a shoebox under Dawson's bed. *Id.* Based on Head's representations, Bay County Judge Joe Grammar issued a search warrant for Dawson's residence. *Id.* at 5-6.

---

[1] Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[2] Although it is unclear from Dawson's complaint, B.H. appears to be the minor child of Dawson's co-defendant. *Dawson*, No. 21-CF-000742, Defendant's Motion to Suppress Evidence and Statements. A copy of Dawson's motion is attached to this report and recommendation as Exhibit 1.

On February 18, 2021, Head and other unidentified Bay County Sheriff Deputies executed the search warrant. Doc. 1 at 5. After the search of Dawson's residence, Bay County deputies arrested Dawson. The State charged Dawson with various drug-related offenses. *Dawson*, No. 21-CF-000742, Information, (Mar. 26, 2021). The State is detaining Dawson pending his criminal trial. Doc. 1 at 6, 7.

Dawson sues Head for violations of the Fourth, Fifth, and Fourteenth Amendments because Head purportedly included a false statement in the affidavit in support of the search warrant. *Id.* at 7. Dawson also asserts a state-law defamation claim based on this alleged misrepresentation.

For relief, Dawson requests that the Bay County Sheriff's Office terminate Head's employment and that the court enjoin Head from being "a police officer again." *Id.* at 7. He also asks for $300,000 in damages.

## II. STANDARD

Because Dawson is a prisoner, the District Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see id.* § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint states a claim upon which relief

can be granted. Fed. R. Civ. P. 12(b)(6); *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2019). Under Rule 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* That is, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

Because Dawson is proceeding *pro se*, the undersigned has liberally construed Dawson's complaint as bringing claims against Head in both Head's official and individual capacities.

A.    <u>**Failure to Allege an Official-Capacity Claim**</u>

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997)); *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is be treated as a suit against the entity.").

In other words, a claim against Head in his official capacity as an investigator is a claim against Bay County, Florida. To the extent that Dawson seeks to hold Bay County liable for the actions of Head, he has failed to state a claim because there is no *respondeat superior* liability under section 1983. *See Monell*, 436 U.S. at 691, 694; *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *see also Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992).

Rather, to hold a municipality or county liable, a plaintiff must allege that "the municipality itself cause[d] the constitutional violation at issue." *Cook ex rel.*

*Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Monell*, 436 U.S. at 694 (holding that a municipality is only liable when its policy or custom inflicts the constitutional injury). That is, a plaintiff must allege that "(1) his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton*, 489 U.S. at 388).

A policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Because a municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, a plaintiff may alternatively allege that the constitutional violation was caused by a custom, which is a "practice that is so settled and permanent that it takes on the force of law" or is a "persistent and wide-spread practice." *Id.*

Here, Dawson's complaint lacks any allegation that the alleged constitutional violations were directly caused by a Bay County custom or policy. Specifically, Dawson does not allege that:

- a Bay County policy authorized, permitted, or encouraged deputies to make false statements in affidavits;

- a Bay County policy authorized, permitted, or encouraged deputies to conduct unlawful searches; and

- making misrepresentations in affidavits is a common practice among deputies in Bay County.

Rather, Dawson's complaint focuses solely on the one alleged misrepresentation and unlawful search in his case. Finally, Dawson does not allege any facts which indicate that Bay County knew it needed to further train or supervise its deputies because of widespread unconstitutional practices with respect to obtaining and executing search warrants. Thus, Dawson's complaint is insufficient to state an official-capacity claim against Head. The District Court, therefore, should dismiss this claim for failure to state a claim upon which relief can be granted.

**B.**     **Request for Injunctive Relief that the District Court Cannot Grant**

To the extent Dawson asks the District Court to direct the Bay County Sheriff's Office to terminate Head's employment and enjoin any state agency from employing Head as a police officer, the District Court must dismiss such a claim. The District Court cannot provide such relief because district courts do not have the authority to dismiss state and county employees or preclude their employment.

*Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1978),[3] *rev'd in part on other grounds*, *Alabama v. Pugh*, 438 U.S. 781 (1978).

**C.     *Younger* Abstention Doctrine**

In *Younger v. Harris*, the Supreme Court held that federal courts should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury. 401 U.S. 37, 53-54 (1971). As the Supreme Court stated: "[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45. The Supreme Court's *Younger* decision was based on a strong federal policy against federal-court interference with pending state judicial proceedings. *Id.* at 44 ("[T]he National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."); *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1250 (11th Cir. 2009).

The *Younger* Court noted that abstention was necessary to afford "proper respect for state functions" and legitimate state interests. *Younger*, 401 U.S. at 44. By "abstaining from exercise of their jurisdiction, the federal courts promote the value of comity between the states and the federal government and avoid

---

[3] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

unnecessary determinations of federal constitutional questions." *Liedel v. Juv. Ct. of Madison Cnty.*, 891 F.2d 1542, 1546 (11th Cir. 1990); *First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1483 (11th Cir. 1987).

Accordingly, *Younger* generally calls for federal courts to abstain if: (1) the federal action would interfere with ongoing state judicial proceedings; (2) the state proceedings implicate important state interests; (3) the underlying state proceedings afford litigants an adequate opportunity to raise federal claims; and (4) there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1268 (11th Cir. 2019); *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003); *Old Republic Union Ins. Co.*, 124 F.3d at 1261.

Courts generally dismiss, pursuant to *Younger*, federal civil actions seeking to enjoin state criminal prosecutions. When a plaintiff seeks only monetary damages for alleged constitutional violations, however, the common practice is to stay the federal proceedings until the State's criminal case has ended. *Tribble v. Tew*, 653 F. App'x 666, 667 (11th Cir. 2016); *Boyd v. Farrin*, 575 F. App'x. 517, 519-20 (5th Cir. 2014); *Simpson*, 73 F.3d at 139; *Doby*, 758 F.2d at 1406.

The first prong of *Younger* is met here because there is an ongoing criminal proceeding against Dawson. *Florida v. Dawson*, 21-CF-000742 (Fla. 14th Cir. Ct.

Feb. 19, 2021); *see generally* Doc. 1 at 6, 7. The state criminal action was commenced approximately nine months before Dawson filed his instant civil-rights complaint. It appears that the lawfulness of the search warrant will be an essential issue in both Dawson's civil-rights case and Dawson's underlying criminal prosecution. The District Court's determination of the validity of the search warrant in this case would impermissibly affect the state criminal proceeding against Dawson. *Santhuff v. Seitz*, No. 1:05-cv-2517-WSD, 2006 WL 8429616, at *4 (N.D. Ga. 2006); *see Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1996) (noting that the "potential for federal-state friction is obvious" in a case where the validity of a search warrant and the arrest are being challenged both in state appellate procedures and in a federal 1983 action); *Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir. 1985) (same). Thus, adjudication of Dawson's federal claims in this action would interfere with the ongoing state criminal proceedings against Dawson.

Second, these state proceedings implicate an important state interest insofar as they are criminal in nature. *Younger*, 401 U.S. at 41-44. "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government . . . ." *Patterson v. New York*, 432 U.S. 197, 201 (1977); *Doe v. Off. of Kan. Secs. Comm'r*, No. 17-80656-CIV, 2017 WL 6557431, at *3 (S.D. Fla. Nov. 28, 2017) (noting that states have an important interest in

making the determination of whether search warrants issued by their courts are constitutional).

Third, the underlying state criminal proceeding affords litigants an adequate opportunity to raise the federal constitutional claims. "An adequate opportunity to raise constitutional challenges exists so long as state procedural law does not bar the party from raising the constitutional claim." *Daniels v. Geraldi*, 578 F. App'x 811, 811 (11th Cir. 2014); *see Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988). Here, the state criminal proceeding provides an opportunity to challenge the sufficiency of the search warrant. That is, Plaintiff can challenge any purported false statement in the search warrant application before his trial, during his trial, and on direct appeal. *Johnson v. State*, 660 So. 2d 648, 656 (Fla. 1995) (noting the standard that must be met for the court to hold a *Franks* hearing on alleged misstatements in search warrant) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)); *see Santhuff*, 2006 WL 8429616, at *1 n.3.

Finally, Dawson has not alleged bad faith, harassment, or any other extraordinary circumstances that would make abstention inappropriate.

Abstention, therefore, is the most appropriate course of action for the District Court to take. *Adams v. Orange Cnty. of New York*, No. 13 CV 8549 (VB), 2014 WL 6646042, at *3 (S.D.N.Y. Nov. 12, 2014) (holding that a court must abstain from addressing a plaintiff's claim challenging the sufficiency of the search warrants

issued in his underlying criminal proceeding). Therefore, the District Court should stay this action pending the resolution of Dawson's state criminal trial.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted, **DISMISS** Dawson's official-capacity claim and claim for injunctive relief;

2. stay this case and hold in abeyance Dawson's remaining claims pending the resolution of his state criminal proceedings; and

3. order the clerk of the court to administratively close this proceeding and permit Dawson to file a motion to reopen this matter at the conclusion of his state criminal proceeding.

At Pensacola, Florida, this <u>11th</u> day of July, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different</u>**

**deadline that may appear on the electronic docket is for the court's internal use only and does not control.** **An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**